*571 Same Case. — On a Re-i-ieariNG.
But the Code of Practice, repealing the law of 1817, restored the old law, and while it provided the writ of arrest both for debt and damages for wrongs, gave the writ of attachment for debt only.
The French text of art. 242, which will be found to be the same in that respect with art. 213, shows that the words “ whatever may be its nature,” in the latter article refer to the fact of the debts being liquidated or not.
Art. 213. Cette arrestation peut étre ordonnée pour toute espéce de dettes échues liquides ou non liquides, et méme pour tons dommages et intéréts qui seraient reclames par le deman-deur pour un tort qui aurait été causé á sa person ne ou dans ses biens.
Art. 242. On peut faire une saisie arret pour paiement de toute espéce de dettes liquides ou non liquides, pourvu qu'elles soient échues, et que le créan-cier qui sollicite saisie-arrét, ou son agent ou fondé de pouvoir, allegue d’une maniere expresse et positive qu’elle est la sornme qu’il reclame.
This provision, as to'liquidation, was introduced from the fact, that the point had been disputed whether any thing but a liquidated indebtedness would sustain an attachment. See Sergeant on Attachment, p. 44 to 51.
The correctness of this position will be found in the origin of our attachment law. This remedy was derived from the other States of the Union. Of the truth of this assertion the phraseology of the statute of 1805, and especially the form and language of the writ prescribed therein, (Martin’s Digest, p. 514,) furnishes abundant internal evidence. There, a debt is inseparable from a contract, and without a contract cannot be created ; Sergeant on Attachment, p. 51 ; and an attachment in an action for a demand ex delicio, is unknown. See the cases collected in Wharton’s Digest of Pennsylvania Reports, to wit: 2 W. C. C. R. 382, Sergeant on Attachment, 44 and 45, 2 Br. Appx. 28, S. P. 2 Br. 02, 5 S. & R. 450, 1 M. 312. In the last case the attaching creditor sued upon a claim which arose thus : A. had stolen from the agent of a bank a quantity of notes, and it was held that the bank could not maintain against A. a foreign attachment for the amount thereof, because the foundation of the claim is ex delicto. The counsel for plaintiff argued that “the act of Assembly granting the writ is a remedial Jaw, and should receive a liberal construction. Section 3d has the words ‘ debt or other demand.’ ” But the court, after disposing of other points in the cause, proceeds to say: “ Bat we do not decide these questions. An insuperable difficulty in the plaintiff’s way arises from the act of 1705. The < use of the process of attachment for the com ueucement of an action, is not commensurate with that of summons, it is limited in respect to persons, to non-residents, and iu respect to the cause of action, to debts contracted or owing, which, by the interpretation of the courts, is extended to all actious arising ex contractu, but no further. The cause of action shown in this case is not of this description. The action of debt is founded upon an express contract, and it lies hv reason of a breach of contract. 1 Esp. Dig. 172 2 Dali. 173. 2 Rolle’sRep. 44. 2 Wash. C. C. Rep. 386. 2 Browne’s Rep. appx. 38. In this case the action arises ex delicto, from a tort committed under circumstances and with an intent which amounts to crime. It is not an answer to say that the plaintiff may waive the tort. Perhaps he may do so, as it respects the action, (although that is a point which we do not decide,) still he cannot do so as it respects this process. The reason is, the act of 1805 does not apply to the form of the action, but to the cause of the action. The form of the action may be debt, indebitatus assumpsit, or on the case, but the cause of the action must arise from a contract.”
So in New York, a demand, ex delicto, will not support a foreign attachment. 3 Gaines’ Reports, 258.
The court has at all times held, that the remedies of arrest and attachment, being onerous, must be strictly construed.
Iu 1 Martin, 65, is the case of a writ of arrest issued in a suit claiming da nages for slander. The law of 18U5 allowed an arrest for “damages or injury to or detention of the property of the petitioner.” The arrest was set aside, because such damages as were claimed were not within the statute, being damages for an injury to the person.
In 2 Mart. N. S. 325, the court again recognized that some cases of damages were without the statute.
In 6 Mart. N. S. the court refused to sustain an attachment in an action for slander. “ Some cases of damages are certainly excluded. The exclusion does not appear to us too broad,, and it is necessary to give effect to the words of the legislator.”
In 3 Robinson, 233, the court said, “ We are by no means disposed to r..lax any thing of the strictness and rigor with which we have heretofore construed our attachment laws. The remedy they provide, is iu itself, a harsh and extraordinary one, and those who resort to it, have no right to complain if they are held to a strict compliance with all the requirements of our statutes on the subject.” See also 8 La. 586.
So in 3 La. 18, the court said, “ Whatever may be the general doctrine of nullity, relating to contracts or judicial proceedings, in ordinary cases, it is believed that in the extraordinary remedy by attachment, all the forms prescribed by law must be strictly pursued, on pain of nullity as a consequence of their neglect.”
The court admits, that the main action against Wright was an action for damages sustained by the tortious conduct of Wright. But it argues, that the damages were sustained by the plaintiff with reference to a debt due to him by Alsbury. Wright was alleged to have assisted Alsbury in evading an attachment issued against his property. Because his attachment was evaded, plaintiff alleged that he failed to collect his debt of Alsbury, and that Wright by his co-operation, in the evasion of the attachment, made himself responsible to the extent of the debt. The court does not of course say, that the conduct of Wright amounted in ■law, to a contract to assume Alsbury’s debt, but that the law inflicts upon him, a responsibility in damages for the wrong done. Do those damages arise from contract, or ex delicto ? If from the former, the remedy by attachment is given, if from the latter, it is not.
2d. If the bond be not a nullity, what is the liability of the sureties to the plaintiff in this suit? Two attachments having-been levied simultaneously on the same property by the two plaintiffs, Irish and McCaughan, one bond of $10,000 was given, conditioned to satisfy such judgment as might be rendered in the two suits. Both plaintiffs were therefore interested in this bond. What is the nature of this interest ?
The court below decreed, that each was interested for one moiety, or $5000 under the art. 2081 of the Civil Code. This court says the article was properly applied by the Parish Judge. If so, how is this reconcileable with the decision which gives Irish a contingent residuary interest in the remaining $5000, if not hereafter absorbed by a successful result of McCaughan’s suit ? If the article 2081 determines the nature of the obligation, Irish has no interest beyond the virile share.
Irish’s suit was for $13,333 33; McCaughan’s for $15,000. The bond was so taken by consent of both plaintiffs, as appears by the endorsement of their counsel on the bond itself. The natural inference is, that they were to share pro rata. If so, Irish was .not entitled to as much as $5000, or one moiety. Yet this amount is now absolutely awarded to him, in a proceeding to which, notwithstanding the exception of appellants, McCaughan was not made party.
Should McCaughan recover a judgment for his whole claim, to wit, $15,000, receiving but $5000, the residue of the bond, he will obtain a less dividend than Irish. Yet the property was in custodia legis for the benefit of both, by process simultaneously levied. How is this case distinguishable from a case of insolvency, where the property is in custody of law for the benefit of creditors ? There, the division is not made by virile shares, but pro rata. How is the case distinguishable from a seizure under two writs of execution simultaneously levied? Certainly in such a case, the distribution would be pro rata.
“ The bond is a substitute for the property.” Dorr v. Ker-shaw, 18 La. 58. In the analogous case of a twelve month bond for property sold under execution, 1 Robinson, 397, the court said; “ It is clear, that this bond in the hands of the marshal, represented the whole price of the property sold, and belonged to the several parties having an interest in it, according to their right in the property itself.”
If the interest of the parties be for virile shares, the reservation to Irish of a residuary interest is erroneous. If it be a bond available according to the amounts claimed pro rata, judgment has been given for too much. If it be a bond whose amount is distributable pro rata, according to the claims of the parties as finally adjudged, then an ex parte application was irregular and the proceeding premature.
Simon, J.
Our object in granting a re-hearing in this cause, was mainly to afford us an opportunity of reviewing our decision on the question whether, under art. 242 of the Code of Practice, an attachment could properly and legally issue on a cause of action not originating in a contract, but based upon a claim for damages? We have attentively re-examined this important question; and although we were originally impressed with the idea that the plaintiff’s demand in the case in which the bond sued on was given, though sounding in damages, was virtually for the payment or recovery of a debt due to him by the party who, from his unlawful act, had become responsible for its amount, and bound to discharge it by way of damages, we must confess that we are not sufficiently satisfied with our previous opinion, and that, were it not that the consideration of another question raised in the cause, has brought us to the conclusion that our first judgment ought not to be changed, we should have felt inclined to overrule it, and to decide that the attachment originally issued, had been illegally and improperly sued out. The question is therefore left open, as not definitively settled, and we shall now proceed to give our reasons why we think that, whatever be its solution, the defendants and appellants are now precluded from availing themselves of the exception upon which it is based.
*576 The defendants being sued as the sureties of Wright, the principal obligor in the attachment bond, we have ascertained that the in suit instituted by the plaintiff against Wright, in which the attachment was issued, the same exception was pleaded by the latter and his co- defendants, as one of the grounds upon which they attempted to obtain the release of said attachment. On referring to the record of the attachment suit, we have found that a rule was obtained by Wright, on the 11th of January, 1842, on the plaintiff, to show cause why the attachment should not be set aside, on the ground, among others, that the attachment had been illegally issued ; on the next day, another rule was taken by the defendant to be permitted to bond the property attached, without prejudice to the first rule; this was granted in the 14th, and the bond sued on was subsequently furnished accordingly. On the 12th of February the trial of the exception came on before the inferior court, which, being of opinion “ that an attachment could issue on the claim set forth in the ‘plaintiff’s petition, Code of Pract-art. 242,” overruled the exception, and maintained the attachment in its full legal effect. An appeal was taken from the judgment rendered on the merits against Wright, and the case having been brought before this court, the question was renewed and insisted on by the appellant’s counsel, orally and in writing ; when it was decided, that the objection come too late, as the case was at issue on its merits, and the property attached bonded. See the case of Irish v. Wright et al., decided in June, 1844. The defendant’s counsel, however, made an application fora re-hearing on the same point, suggesting the fact, that the property was bonded without prejudice to his rights in the rule for dissolution ; but it was refused, as it was then considered that said defendant having filed his answer to the merits on the first of February, about twelve days previous to the action of the lower court on the exception and to the judgment rendered thereon, his said answer was a waiver of the exceptions by him previously pleaded. Thus, both courts have already passed upon this exception as to the principal obligor, and the question occurs; can it now be renewed and set up by his sureties ? or, in other words, is it not res judicata against the latter, as well as against Wright?
We think it is. It is clear that the judgment rendered against *577 the principal obligor, overruling an exception upon which the validity of the bond sued on depended, and therefore the liability of the parties thereto, has acquired the force and effect of res judi-cata ; it was definitive at the time this suit was instituted, with regard to Wright, and has become so with regard to all other parties therein interested, by the elapsing of the time allowed by law for appealing therefrom. The defendants did not even plead the exception in the lower court; the question was not raised there , and it was only on their appeal before this court, that they made the suggestion that the attachment, in consequence of which the bond sued on was given, had been illegally issued, as the plaintiff’s claim was one in damages for a tort.
Now, it is a well recognized doctrine that the obligation of a surety, not existing without that of a principal obligor, the contract of suretyship must be governed by the extent of the obligations of >the principal debtor ; it cannot exceed the amount due under the principal contract, nor can it be contracted under more onerous conditions j and it follows, therefore, that if a judgment be rendered in favor of the principal debtor against the creditor, such judgment must have the force of res judicata in favor of the surety, provided it be not the result of personal exceptions which such principal debtor alone may be entitled to plead. u On a done consideré, says Toullier, Vol. 10, No. 209, la caution com-me etant la méme partie que le débiteur a Végard de tous les jugemens qui la rendent moins onéreuse.” In No. 210, he says: “ Vice versa, lejugement rendu contre le débiteur enfaveur du eré-ancier peut étre oppose d la caution, et declaró exécutoire contre elle; mais elle peut s’en porter appelante.” Such is the opinion of Pothier, Obligations, Vol. 2, p. 299, No. 61, who considers that the obligation of a surety, depending upon that of the principal debtor, to which it is a mere accessory, such surety ought to be viewed as being the same party with such principal debtor, with regard to all that may be judicially decided (jugé) for or against the principal obligor. See also ff. 1. 21, § 4, De except, xeijud. Civ. Code, arts. 3006, 3029, This doctrine is very clear, and is fully applicable to this case, for, if it were otherwise, we would have here the anomaly, as has been well remarked by the plaintiff’s counsel, that by the judgment against the defend *578 ant, the attachment would be maintained, and the property seized made liable for its satisfaction; and yet the bond which represents the property would be declared to be a nullity, and the sureties discharged. This cannot receive our sanction; and we must hold the appellants liable under the judgment rendered ill favor of the plaintiff against the principal debtor; said judgment having the force of res judicata against all the parties therein concerned.
With regard to the reservation made in our first judgment in relation to the other half of the amount of the bond sued on, in case it should not be recovered by M’Caughan, we see no reason why it should not be maintained. It seems to us that, as we have already said, if the plaintiff had been the only creditor at whose suit the attachment had been sued out, he would be entitled to the exclusive benefit of the bond, and to the whole amount thereof, and that he ought not to be deprived of such benefit, if it turns out subsequently that M’Caughan cannot recover the portion reserved for him in consequence of his attachment. Such portion would have accrued to the plaintiff in this suit, if M’Oaughan had not sued out his simultaneous attachment; it is not sufficient to satisfy the plaintiff’s judgment; the bond represents the property attached, and the principal defendant cannot have any right to recover any part of the property attached, or be dispensed from paying any part of the amount of the bond, unless there be a surplus over and above the sum to be recovered.
It is, therefore, ordered that our first judgment remain undisturbed.